### In re ACADIANA ELECTRICAL SERVICE, INC., Debtor.

### In re Harold F. LEMOINE and Marie Wellen Fontenot Lemoine, Debtors.

### Bankruptcy Nos. 483–00098–LO–7, 483–00114–LO–7.

United States Bankruptcy Court, W.D. Louisiana, Lafayette-Opelousas Division.

Aug. 12, 1985.

Michael V. Matt, Eunice, La., for Acadiana Bank.

Keith Rodriguez, Lafayette, La., for trustee.

## REASONS FOR JUDGMENT

RODNEY BERNARD Jr., Bankruptcy Judge.

This cause came on for hearing upon the motion of Acadiana Bank for removal of the trustee, Charles N. Wooten, at Opelousas, Louisiana on May 15, 1985.

These bankruptcy cases were filed on February 4, 1983 and the trustee was appointed that day. The schedules of assets and liabilities in the corporate case, filed March 21, 1983, reveal debts totaling $1,370,463.64 and property valued at $463,-

989.00. Neither the debtor's summary nor the trustee's inventory reveal the existence of accounts receivable totaling $509,000.00. The collection of these accounts receivable, assigned to Acadiana Bank, is one of the bones of contention herein. The other is the sale of the sole asset of Rent-a-Space, Inc., thirty-four (34%) percent of the capital stock of which was owned by the debtors, Harold Lemoine and his wife.

Acadiana Bank alleges as the basis of its motion that the trustee has allowed the assets of the debtors to diminish by failing to collect over $300,000.00 in accounts receivable and has prejudiced the rights of all creditors by allowing a below market price sale, without notice, of the principal asset of a corporation in which the individual debtors held a 35% interest.

Brief History of Acadiana Electrical:

Acadiana Electrical Service, Inc. was incorporated by Harold P. Lemoine on February 1, 1974. Mr. Lemoine was the sole stockholder having been issued 52,000 of the authorized 100,000 shares. Mr. Lemoine and his wife, Marie Wellen Fontenot Lemoine were the first directors. The registered agent of the corporation was the lawfirm of DeVillier, Ardoin and Morrow of Eunice, Louisiana. The senior partner of that lawfirm is Veil David DeVillier, hereinafter referred to simply as DeVillier.

The corporation engaged in the business of electrical contracting and according to Mr. Lemoine's uncontradicted testimony he was approached by his attorney, DeVillier, wearing his hat as President of Acadiana Bank, with an offer to finance the corporation so that it might expand. By sometime in 1982 the corporation owed the bank about $1,000,000.00. This obligation was secured by mortgages, collateral notes, pledges of accounts receivable and subsequently by a voting trust of the capital stock of Acadiana Electrical. DeVillier advised the debtor that the Board of Directors of this corporation was to be reconstructed. Lemoine's two sons, then members of the Board, were to be deleted and the new Board would be composed of Mr.

and Mrs. Lemoine, James Exner, James Dupre, a vice-president of Acadiana Bank, and Larry Sikes, a certified public accountant employed by Acadiana Bank.

Following the restructuring of the Board, Mr. Lemoine testified that the Board meetings evolved into advisory sessions with Mr. Dupre doing the advising. No votes were ever taken on any of the matters discussed and although Mr. Lemoine testified that he never felt forced to do anything, he had the feeling that if he did not agree to act upon Mr. Dupre's advice that the funding of his operations by Acadiana Bank would be discontinued. He stated that although the assets of his corporation were insufficient, by liquidation, to satisfy the debt to Acadiana Bank, that during the year following the restructuring of the Board, the bank, by directing the corporation's cash flow, was able to reduce its claim by approximately $350,000.00.

Just prior to the filing of these bankruptcy cases, Acadiana Bank filed executory process against the Lemoines and Acadiana Electrical under which the Lemoine residence, all assets of Acadiana Electrical and all assets of Rent-a-Space were seized. DeVillier, President of Acadiana Bank and legal counsel to Lemoine and Acadiana Electrical, was the agent for service of process of that corporation and accepted service of process in its behalf, then immediately resigned as agent. According to Mr. Lemoine, DeVillier never did advise him of the suit. He found out about it through a Mr. Gautreaux who was a shareholder of Rent-a-Space. This corporation, which was not a debtor of Acadiana Bank, was successful in securing an injunction against the seizure of its assets.

### The Issues

The two main thrusts of Acadiana Bank's motion for removal of the trustee are, first, that the trustee has allowed assets of the estate to diminish by failing to be diligent in his collection of accounts receivable due the debtor corporation and assigned to Acadiana Bank and, secondly, that the trustee has prejudiced the rights of creditors by allowing a below market price, private sale without notice to creditors, of an asset belonging to a corporation in which the individual debtors, Mr. and Mrs. Lemoine, held corporate shares.

### Findings and Conclusions

The only witness called by the bank was James Dupre its vice-president. Mr. Dupre testified that, in his judgment, the trustee had procrastinated in the collection of accounts receivable; that the trustee had failed to take the steps necessary to collect these accounts and had only recently begun filing lawsuits to collect some of the larger, and more difficult to collect, accounts. He testified that, in his experience, many bankruptcy cases were completely administered within a matter of weeks. He could not, however give an example of any such case. He admitted that this was the largest bankruptcy case with which he had ever had any involvement. Mr. Dupre further testified that it was extremely difficult to contact the trustee by phone and that most of the bank's letters of inquiry to the trustee went unanswered. Mr. Dupre admitted that he had been placed upon the board of directors of the debtor corporation only to act in an advisory capacity and was paid $200.00 to $300.00 per board meeting, by the corporation, for his services. He further admitted that his advice to the corporation resulted in the collection of a large percentage of the bank's debt to the exclusion of other creditors, which was accomplished by debiting the corporate account at the bank rather than having the corporation make payments to the bank by check.

In his defense, the trustee called James Exner, an accountant, who had been employed as comptroller for the debtor corporation and who, since the corporation's demise, had been employed by the trustee. Mr. Exner had done the record work for the trustee in connection with the collection of the accounts. His records reflected that shortly after the bankruptcy cases were filed, demand letters were mailed out on all of the accounts. When no response was made to some of these letters, another de-

mand letter was forwarded. As a result, some $180,000.00 was collected during the course of administration. Over $200,000.00 in accounts receivable proved to be uncollectable due to the fact that many unpaid material suppliers had filed liens on the jobs contracted by Acadiana Electrical. This resulted in set-offs being claimed by the debtors of these accounts. Of the remaining $129,000.00, uncollected at the time of this hearing, there was pending a consent judgment for $48,000.00, soon to be collected by the trustee.

The trustee's testimony relates the specific problems encountered in his collection of the various accounts, details of which need not be recounted here. Suffice it to say that this court is satisfied that, within the bounds of practicalities, the trustee has fully performed the duties of his office in this regard. The trustee has placed in evidence ten letters, identified as Exhibits T–1 and T–2 dated between March, 1983 and November 1984, all addressed to either Acadiana Bank or its attorneys, which were fairly well calculated to keep the bank apprised of the trustee's efforts in these cases.

During the period March 31, 1983 through March 31, 1984 there were 7,059 cases pending in the Bankruptcy Court for the Western District of Louisiana. Approximately one-half of these cases were being administered by six trustees working within the geographical limits of the area serviced by the Lafayette-Opelousas and Lake Charles divisions. The cases are nearly evenly divided among these six trustees. [Since then, there have been four more trustees added to the panel. The size and composition of the trustee panel is controlled by the Administrative Office of the U.S. Courts.] It is a small wonder that each and every inquiry of a creditor is not answered as promptly as the creditor would wish.

Section 363 of the Bankruptcy Code requires that before the trustee may sell property of the estate, he must give notice of his intention to all creditors and that the creditors be given an opportunity for a hearing upon any objection they may have to the proposed sale. In this case, the debtors Harold and Wellen Lemoine owned 34% of the capital stock of the corporation, Rent-a-Space, Inc. At some time during the administration of the Lemoine bankruptcy case, the trustee was advised by the other shareholders of Rent-a-Space that an offer had been made for the purchase of the assets of that corporation which consisted of mini-warehouses and the real estate upon which they were situated. The shareholders, including the trustee, considered the offer of $330,000.00 for the property very favorable and all were agreeable to accepting it. After paying off the mortgage note on the property, upon which the Lemoines were personally liable, their estate netted $60,000.00 which will enure to the benefit of unsecured creditors.

The Bankruptcy Code makes provision for the removal of a trustee. Section 324 thereof reads as follows:

The court, after notice and a hearing, may remove a trustee or examiner, for cause.

A review of the reported cases decided since the advent of the Code reveal only one instance where a trustee was removed from cases to which he had been assigned. That case concerned a trustee appointed to Chapters 13 and XIII cases and its facts make it clearly inappropriate to a decision in this case. See *In the matter of Chapter 13, Pending and Future cases, BCD 34.* The authoritative treatise, Collier on Bankruptcy, 15th Ed. ¶ 324.01 et seq. contains a discussion of the various grounds for removal of a trustee. One of the grounds listed "delaying the institution of suits to recover voidable transfers of assets by the bankrupt;" comes the closest to the facts of the instant case. Although *Zimmerman et al., Trustees v. Farmington Shoe Company, et al,* 31 F.2d 405 (1st Cir.1929) did not concern removal of a trustee, the 1st Circuit, in dictum, said "If the delay was mainly due to inefficiency of the trustees, they should have been removed by the court under General Order XIII (set out under 11 U.S.C. A ¶ 53). Trustees in bank-

ruptcy are quasi officers of the court; the court has an affirmative duty to see that their performance is prompt and efficient in marshaling and distributing the estate to creditors, normally entitled to their final dividends within about a year." In that case the bankrupt was adjudicated in June, 1925. Three trustees were appointed by the referee on July 11, 1925. One of them died and his successor was appointed on September 15, 1927. The preference actions were instituted on October 28, 1927. The year of the First Circuit decision was 1929. It may well have been reasonable to assume that, at that time, a trustee could fully administer a case and pay dividends "within about a year". In the 1980's this is merely wishful thinking except in the smallest and most uncomplicated cases. Under the factual situation here presented, it is the conclusion of this court that the trustee has administered the corporate case as expeditiously as possible.

Turning to the matter of the disposition of the assets of Rent-a-Space, Section 363 of the Bankruptcy Code permits a trustee to sell property of the estate only after notice and a hearing. The assets of Rent-a-Space were not property of the Lemoines' estate. The Lemoines simply held stock in that corporation. The other shareholders were desirous of selling and the trustee, exercising his business judgment agreed. Nothing further is required by the Code and this court concludes that the Acadiana Bank's complaint is without merit.

This concludes my written reasons in connection with the judgment signed on June 17, 1985.